**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLLEEN K. COTTER,<br><br>                              Plaintiff,<br><br>v.<br><br>MOVEMENT MORTGAGE, LLC,<br><br>                              Defendant. | Case No.:  3:23-cv-01003 W (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND [DOC. 14]** |

Pending before the Court is Defendant Movement Mortgage, LLC's motion to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Colleen K. Cotter opposes the motion.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1).  For reasons discussed below, the Court **GRANTS** the motion [Doc. 14] **WITH LEAVE TO AMEND**.

I.   **FACTUAL BACKGROUND**

In 2015, Plaintiff Colleen K. Cotter and her then husband David Diaz Andaleon purchased property at 4052 Tennyson St., subject to the terms of a mortgage held by

Summit Funding, Inc. (*FAC* [Doc. 13] ¶ 9.) In 2020, Andaleon transferred the property to Cotter to be held as her "sole and separate property." (*Id*. at ¶ 11.) Prior to this transfer, the mortgage presumably was sold to Defendant Movement Mortgage, LLC ("Movement"), who became Cotter's principal lender. (*Id*. at ¶ 12.)

In 2021, Cotter refinanced the mortgage with Movement. (*FAC* at ¶ 14.) Nearly a year later, Movement began contacting Cotter for additional documents as part of a "random follow up audit." (*Id*. at ¶ 15.) Although she complied with the audit, Movement then contacted Cotter's tax accountants without her knowledge and demanded copies of tax returns. (*Id*. at ¶ 16.) When Cotter asked Movement the reason for these requests, she alleges she was told the underwriter believed she "was getting back with [her] ex-husband" and that "the alimony and child support information [Movement] had was inaccurate." (*Id*. at ¶ 17.) Cotter further alleges she was harassed for several weeks to months by Movement representatives, and "was essentially accused of mortgage fraud by Movement." (*Id*. at ¶ 18.)

This case was initially filed in the San Diego Superior Court, and Movement removed on grounds of federal question, diversity, and supplemental jurisdiction. 28 U.S.C. §§ 1331–32, 1367, 1441. The original Complaint asserted claims for violation of the Fair Debt Collection Practices Act, invasion of privacy, and breach of fiduciary duty. Movement moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). In July, this Court granted Movement's motion, but granted Cotter leave to amend the invasion of privacy cause of action, and to assert new causes of action under the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), breach of the implied covenant of good faith and fair dealing, and breach of contract.

On August 11, 2023, Cotter filed the FAC alleging violations of the Rosenthal Act, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law ("UCL"). Movement again moves to dismiss all of the causes of action under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  To do so, it must offer sufficient factual allegations that, if true, "raise the right to relief above the speculative level" and render the claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).  If, however, the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (citation omitted).

In evaluating the motion, the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 842 F.3d 1156, 1159 (9th Cir. 2016).  But this presumption of validity does not extend to legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Thus, the pleading analysis requires the court to eliminate all of plaintiff's conclusory allegations and evaluate the remaining claims for facial plausibility.

## III.   DISCUSSION

### A.   The Rosenthal Act

The Rosenthal Act prevents "debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1.  To establish a claim under the Act, Cotter must establish that (1) she is a debtor; (2) she was

the object of collection activity arising from a debt; (3) Movement is a debt collector; and (4) Movement violated a provision of the Rosenthal Act. *Sanders v. LoanCare LLC*, 2019 WL 441964, at *2 (C.D. Cal. Feb. 1, 2019). Movement argues the Rosenthal Act does not apply because Cotter's debt was not "due or owing" within the meaning of the statute, and thus there was no "debt collection" activity. (P&A [Doc. 14-1] at 7.)

The Rosenthal Act defines the term "debt collection" as "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b). A "consumer debt" is defined as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." *Id.* § 1788.2(f). Mortgage debts fall within the definition of a "consumer debt." *Id.*

Movement contends the Rosenthal Act only protects debtors from the collection of debts that are "due and owing." (P&A at 7–8.) Movement argues "due and owing" equates to "delinquent" debts that are immediately "subject to collection." (*Id.*) Because there are no allegations indicating Cotter's debt was delinquent, Movement argues her debt was not "due and owing," and thus its conduct does not qualify as the "collection of" a consumer debt. (*Id.*) The Court agrees.

Numerous federal district courts have found that for a debt to be "due and owing" within the meaning of the Rosenthal Act, the debt must be past due, delinquent, or paid during a grace period. *See Burris v. HSBC Bank USA, Nat'l Ass'n,* 2014 WL 12772260, at *5–6 (C.D. Cal. Dec. 19, 2014); *Sanders*, 2019 WL 441964, at *2; *Langston v. Gateway Mortg. Grp., LLC*, 2021 WL 234358, at *2 (C.D. Cal. Jan. 15, 2021). Additionally, according to the California Attorney General, "'[d]ue' generally means 'having reached the date at which payment is required' or 'immediately enforceable'" and "'[o]wing' generally means 'due to be paid.'" 85 Ops. Cal. Atty. Gen. 215, 2002 WL 31440180, at *2 (Oct. 29, 2002) (citations omitted). The Attorney General has further stated that the "legislative purposes [of the Rosenthal Act] appear to be focused entirely upon debts that have become delinquent and subject to immediate collection activities."

(*Id.*)  In contrast to these authorities, Cotter has not cited any authority holding that the Rosenthal Act applies to debts that are not past due or delinquent and makes no allegation that her debt was past due, delinquent, or paid during a grace period.

Given the authority supporting Movement's "due and owing" argument and the lack of any allegation in the FAC suggesting Cotter's mortgage was past due, delinquent, or paid during a grace period, the Court finds Movement was not engaged in "debt collection" activity within the meaning of the Rosenthal Act.  Accordingly, the FAC failed to state a plausible claim for relief under the Rosenthal Act.[1]

### B.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Cotter also asserts a claim for breach of the implied covenant of good faith and fair dealing (i.e., bad faith) against Movement.  In every contract there is an implied covenant that each party will "not . . . do anything which will deprive the other parties thereto of the benefits of the contract." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1156 (N.D. Cal. 2013) (*citing Harm v. Frasher*, 181 Cal.App.2d 405, 417 (1960)).  "An implied covenant of good faith and fair dealing cannot contradict the express terms of a contract" and "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." *Id.* (citations omitted).  "[W]hat th[ese] dut[ies] embrace[] is dependent upon the nature of the bargain struck between the [two parties] . . . and the legitimate expectations of the parties which arise from the contract." *Com. Union Assurance Companies v. Safeway Stores, Inc.*, 26 Cal. 3d 912, 918 (1980).  "[A] plaintiff must identify the specific contractual provision that was frustrated" by the claimed breach of good faith and fair dealing. *Rockridge Tr.*, 985 F. Supp. 2d at 1156.  Ultimately, "[t]he issue of whether the

---

[1] Movement also argues that the FAC failed to state a Rosenthal Act claim because it did not threaten her with an accusation that she committed a crime.  (*P&A* at 8–9.)  Because the FAC does not allege facts indicating that the debt was "due or owing," it is unnecessary to address this argument.

implied covenant of good faith and fair dealing has been breached is … 'a question of fact unless only one inference [can] be drawn from the evidence.'" *Moore v. Wells Fargo Bank, N.A.*, 39 Cal. App. 5th 280, 292 (2019) (*citations omitted*).

Movement raises three related arguments against Cotter's bad faith claim: (1) it's inquiries are a form of conduct that was bargained for and authorized by the agreement; (2) Movement's inquiries did not deny Cotter of any benefits of the agreement; and (3) Cotter did not identify a provision in the agreement that was unfairly frustrated by the inquiries. (*P&A* at 9–11).

In support of the first argument, Movement contends two provisions in the agreement entitled it to make the inquiries at issue in this case.  The first arises from the provision stating that the mortgage "can be sold one or more times without prior notice to Borrower." (*P&A* at 10.)  According to Movement, this implies that it can request information from Cotter that relates to the sale of the property. (*Id.*)  But regardless of whether Movement had the right to request documents in connection with the sale of the loan, the covenant of good faith and fair dealing required Movement to act reasonably in doing so.  *See Moore*, 39 Cal. App. 5th at 291 ("A party violates the covenant [of good faith and fair dealing] if … its conduct is objectively unreasonable.")  Thus, the issue is not whether Movement had the right to request the information, but whether the FAC's allegations indicate Movement did so unreasonably.

According to the FAC, when Movement initially requested information from Cotter, it informed her that it was performing a "random follow up audit." (*FAC* ¶ 15.)  Although Cotter cooperated, the FAC alleges that "without speaking with her about it first, MOVEMENT then contacted COTTER's tax accountants and demanded copies of tax returns that had already been provided." (*Id.* ¶ 16.)  Her "accountants [then] contacted COTTER to let her know about the strange phone call(s)." (*Id.* ¶ 17.)  When Cotter contacted Movement, she was told "the Underwriter thought she 'was getting back with [her] ex-husband,' and believed the alimony and child support information they had

was inaccurate" and that the "Underwriter thought COTTER 'got along too well with her ex.'" (*Id.*)  The FAC further alleges Cotter was

> harassed for several weeks to months by representatives of MOVEMENT; was essentially accused of mortgage fraud by MOVEMENT, for no reason; and became aware of calls to third parties about her, requesting information that had already been provided. The comments made to/about COTTER regarding her relationship status were wildly inappropriate, unnerving, and distressing.

(*Id.* ¶ 18.)  After Cotter hired an attorney, Movement denied the above conduct, "made additional misleading statements," and alleged it was seeking the information as part of "MOVEMENT's ability to acquire additional information to sell loans." (*Id.* at 19.) Reading all reasonable inferences in favor of Cotter, the Court finds the above allegations support a finding that Movement acted unreasonably in seeking Cotter's financial information.

   Second, Movement argues it's inquiry was allowed under the following term:

> Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.

(*P&A* at 11.)  According to Movement, this provision implies that it has the right to collect information to confirm the accuracy of the information Cotter provided during the loan application process.  (*Id.*)  Again, assuming Movement had the right to collect such information, Movement was required to do so in a reasonable manner.  The above allegations that suggest Movement acted unreasonably in connection with the alleged sale of her mortgage also support a finding it acted unreasonably in connection with its loan-application audit.  For these reasons, Movement's argument lacks merit.

   Movement also argues it did not violate the implied covenant because its actions did not deny Cotter the benefit of any provision in the loan agreement.  (*P&A* at 11.) Again, assuming it had the right to request information to sell the loan or investigate

7

fraud, under the implied covenant of good faith and fair dealing, Cotter had a right for such inquiries to be performed reasonably.  This is consistent with Cotter's argument that a benefit of the mortgage includes Movement "act[ing] appropriately when conducting any further business with the loan, whether it be collecting payments for the loan or collecting additional information and documents to sell Plaintiff's loan." (*Opp'n* [Doc. 16] at 4).  It is also consistent with the FAC's allegation that Cotter had "the right to be free from harassment or invasive behaviors that a reasonable person would find threatening, intimidating, or otherwise disconcerting." (*FAC* at ¶ 37.)  To the extent Movement's alleged conduct was unreasonable, the allegations also support a finding that Cotter was deprived of these benefits.

Finally, Movement argues that because Cotter has not identified a specific provision in the agreement that was unfairly frustrated by its inquiries, the implied covenant claim must fail.  The Court agrees.  The FAC does not identify the mortgage provisions giving rise to Movement's alleged bad faith.  Those provisions were identified in Movement's motion.  For this reason, the Court will grant Movement's motion to dismiss the breach of implied covenant of good faith and fair dealing claim.

### C. <u>Violation of California's Unfair Competition Law</u>

Cotter's final claim is for violation of California's UCL.  It protects against "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…." Cal. Bus. & Prof. Code §17200.  Cotter alleges Movement "violated the UCL by engaging in unlawful, unfair, and fraudulent business practices, including … violating the Rosenthal Fair Debt Collection and Practices Act and breaching the implied covenant of good faith and air dealing." (*FAC* at ¶ 46.)  Thus, her UCL claim rises and falls with the success or failure of the Rosenthal Act and implied covenant claims.  Because Cotter's Rosenthal Act and implied covenant claims fail, the UCL claim also fails.

### D. Leave to Amend

Cotter requests leave to amend. (*Opp'n* at 5.) "If a court determines that a complaint should be dismissed, it should give leave to amend unless 'the pleading could not possibly be cured by the allegation of other facts.'" *Bailey v. Rite Aid Corp.*, 2019 WL 4260394, *3 (N.D. Cal. Sept. 9, 2019) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).) "Although the rule should be interpreted with extreme liberality, leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citations omitted).

As demonstrated by the above analysis, the Court cannot conclude that it would be futile to allow Cotter leave to amend. For these reasons, the Court will grant Cotter leave to amend.

### IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Movement's motion to dismiss [Doc. 14] and **ORDERS** as follows:

- The Rosenthal Act cause of action is **DISMISSED** without leave to amend.
- The breach of the implied covenant of good faith and fair dealing cause of action and Unfair Competition Law cause of action are **DISMISSED** with leave to amend.

The second amended complaint is due on or before **November 29, 2023**. This is Cotter's final opportunity to attempt to state a cause of action.

**IT IS SO ORDERED.**

Dated: November 15, 2023

Hon. Thomas J. Whelan
United States District Judge